IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEROME D. RUFFINS,
     Plaintiff,

vs.                         Case No.: 3:16cv703/RV/EMT

DEPUTY JARRETT BENJAMIN DESILVA, et al.,
     Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Jerome D. Ruffins ("Ruffins"), an inmate of the Florida Department of Corrections ("FDOC"), is proceeding pro se and in forma pauperis in this civil rights action brought under 42 U.S.C. § 1983.  Ruffins claims that Defendants, all three of whom are deputies of the Escambia County Sheriff's Office, used excessive force during his arrest on October 17, 2016 (*see* Fifth Amended Complaint, ECF No. 45).

Discovery ended, and Defendants filed a motion for summary judgment on October 31, 2019 (*see* ECF Nos. 81, 82, 83).  The court then issued an order advising Ruffins of the procedural rules and legal standard governing summary judgment motions (*see* ECF No. 85).  The court set an initial deadline of December 4, 2019, for Ruffins to file a response to the motion for summary judgment (*see id.*).

Defendants subsequently filed a Motion for Contempt of Court and Motion for Sanctions, seeking dismissal of this case with prejudice as a second sanction for Ruffins' refusal to cooperate in his re-convened deposition (*see* ECF No. 91). On December 12, 2019, the court issued an order setting 21-day deadline for Ruffins to file a response to the motion for sanctions (*see* ECF No. 92). At Ruffins' request, the court extended the deadline for him to respond to **both** of Defendants' dispositive motions to January 6, 2020 (*see* ECF Nos. 93, 94). Ruffins sought a second extension of the response deadline (*see* ECF No. 102). The court extended the deadline to February 6, 2020, but expressly notified Ruffins no further extension would be granted absent extraordinary circumstances (*see* ECF No. 103). Ruffins sought a third extension of the deadline, which Defendants opposed (ECF Nos. 104, 105). The court denied Ruffins' request (ECF No. 106).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of Defendants' Motion for Contempt of Court and Motion for Sanctions (ECF No. 91), it is the opinion of the undersigned that Defendants' motion should be granted, and this case dismissed as a second sanction for Ruffins' willful refusal to cooperate in his deposition.

## I.    STATEMENT OF ISSUES AND RELEVANT FACTS

At issue is whether Ruffins failed to obey the court's order directing the parties to re-convene his deposition after his refusal to answer some questions during his first deposition, and if so, whether the severest sanction of dismissal should be imposed.  The relevant facts are the following.

On September 19, 2019, the court granted Defendants' motion to depose Ruffins (*see* ECF Nos. 66, 67).[1]  On October 10, 2019, Defendants filed a Motion to Compel Answers to Deposition Questions, asserting that Ruffins refused to answer seventeen (17) questions during his deposition (*see* ECF No. 74).  Defendants requested a brief extension of the discovery deadline to reconvene Ruffins' deposition as to the questions he refused to answer, as well as any follow-up questions that may arise from Ruffins' answers (*id.* at 5).  Defendants also requested fees and costs in preparing the motion to compel and re-taking Ruffins' deposition (*id.* at 5–6).

On October 30, 2019, Ruffins responded in opposition to the motion to compel (ECF No. 78).  Ruffins contended his refusal to answer was based upon the following: (1) Defendants allegedly failed to properly notice the deposition; (2) the

---

[1] Defendants were required to seek the court's permission to take Ruffins' deposition, because he is incarcerated.  *See* Fed. R. Civ. P. 30(a)(2)(B).

Case No.:  3:16cv703/RV/EMT

questions posed by Defendants' counsel sought irrelevant information; and (3) his refusal to answer was based upon his Fifth Amendment privilege against self-incrimination (*see id.*).

On November 15, 2019, the undersigned issued an order granting Defendants' motion to compel (ECF No. 87).  The court began by setting out the parties' positions, including a direct quote from Defendants' motion to compel identifying seventeen (17) questions which Ruffins refused to answer (*id.* at 2–3).  The court noted that the deposition transcript verified Ruffins' refusal to answer (*id.* at 3).  The court then described Ruffins' position as to why he refused to answer  (*id.* at 3–4).

The body of the order discussed each of Ruffins' three asserted grounds for refusing to answer.  In doing so, first, the court clearly advised Ruffins that his objections to the notice and timing of the deposition were not a basis for refusing to answer questions (ECF No. 87 at 5).  Second, the court clearly instructed Ruffins that objections to the relevance of Defendants' questions did not excuse his refusal to answer, and that he was required to answer the questions regardless of the legitimacy of his relevancy objections (ECF No. 87 at 5–6 (citing Fed. R. Civ. P. 30(c)(2) and *Isaac v. RMB Inc.*, 604 F. App'x 818, 821 (11th Cir. 2015) (a run-of-the-mill relevance objection does not allow the deponent to refuse to answer the question) (unpublished but recognized as persuasive authority))).  Third, the court

ruled that Ruffins' assertion of his Fifth Amendment privilege was without merit (ECF No. 87 at 6–10). The court's order also expressly stated there was "no prohibition against compelling [Ruffins] to answer the deposition questions he refused to answer, **as well as any follow-up questions that may arise from his answers**." (*id.* at 10) (emphasis added).

The court ordered the following:

1. Defendants' motion to compel (ECF No. 74) is **GRANTED**, and the parties are **DIRECTED** to reconvene Plaintiff's deposition before **DECEMBER 6, 2019**. Plaintiff must provide complete and truthful answers to the questions posed by Defendants' counsel. **Plaintiff is warned that his failure to obey this order will be treated as contempt of court and will result in a recommendation of dismissal of this case in whole or in part.**

2. Plaintiff's motion for protective order, included in his response to the motion to compel (ECF No. 78), is **DENIED**.

3. Defendants' motion to extend the dispositive motions deadline (ECF No. 76) is **GRANTED**, and the deadline for filing dispositive motions is extended to **DECEMBER 27, 2019**.

4. Within **FORTY-FIVE (45) DAYS** from the date of this order, Defendants must submit documentation of the expenses they incurred in making the motion to compel (ECF No. 74).

(ECF No. 87 at 12–13) (emphasis in original).

The parties re-convened Ruffins' deposition on December 4, 2019, at Wakulla Correctional Institution in Crawfordville, Florida, which is nearly 100 miles from Panama City, where the law offices of Defendants' counsel and the court reporter

are located.[2]     Immediately upon being sworn, Ruffins stated his intention of

answering only the seventeen questions referenced in the court's order:

> Q [by Defendants' counsel]. Mr. Ruffins, you and I have been in this position before.  This is an opportunity to reconvene your original deposition that was taken back on October 2nd of 2019.
>
> Is that your understanding of why we're here today?
>
> A.  My understanding was that you were going to reconvene the 17 questions that I refused to answer.
>
> Q.  So your understanding is that I am here only to reconvene the 17 questions you refused to answer?
>
> A.  In the Court order; that's correct.
>
> Q.  This is the Court order in response to the defendant's motion to compel; is that correct?
>
> A.  Document 87?
>
> Q.  Document 87, and that's the—Document 87 is the order that you're referring to from the judge; is that right?
>
> A.  That's correct.
>
> Q.  Is that what you have in front of you?
>
> A.  It is.  Would you like to take a look at it?
>
> Q.  Sure.  Let's take a look at it.  I just want to get that on the record that that's the document that you were looking at since obviously

---

[2] Ruffins' first deposition also took place at Wakulla C.I. (*see* ECF No. 74-1).

this isn't being video recorded so there's something on the record about what we're talking about here.

So I wanted to refer you actually to the end—well, let me back up. The defendants' motion to compel, Document Number 74, that was sent to you that was filed long before the judge drafted and signed this order. The defendants were requesting that we would have an opportunity to ask you the deposition questions listed herein as well as any follow-up questions thereto that might arise from the answers given to those questions.

Now, the Court ordered that you were to provide complete and truthful answers to the questions posed by defendant's counsel, and I'm referring to paragraph Number 1 on page 12 of 13 of Document 87.

Is it your understanding that you're only supposed to answer the 17 questions and that you're not required to answer any other questions that I may ask you?

A.  It's my understanding, according to his order, I'm only supposed to answer the 17 questions that were refused—that I refused to answer in the last deposition and those are all that I'm prepared to answer today.

Q.  So any other questions beyond those 17 questions, you—are you saying to me that you are refusing to answer any other questions?

A.  No, I'm not stating that I refuse to answer the questions.  I'm objecting, because I'm not prepared to answer those questions today.

(Deposition of Jerome Ruffins 4:13–6:17, Dec. 4, 2019).

Counsel asked her first question, and Ruffins responded with obstructionist behavior which lasted throughout the deposition:

Q [by Defendants' counsel].  Now, the first question we originally had been talking about the residence where the arrest took

place and that residence was your uncle's residence.  We established that.  And then I had asked you—the original question was, so at the time you were standing in the front yard of your uncle's residence, you did not have a permanent residence to go to.  And I'm reading from page 13, lines 10 through 12.

As an answer, you shook your head.  Then I said, okay, then if I'm understanding you correctly, you had a variety of different residences that you could have gone to, and you said, uh-huh, answering in the affirmative.

And I said, and would those—excuse me, and would they have been across Escambia County or would they have been in other counties as well, and that's when you said you didn't think it pertained to the civil case.

So moving on to page 14 my question was, when you said you had a variety of different residences you could have gone to at that time to sleep at that evening, would those residences have been just in Escambia County or other counties as well, so what is your answer to that question?

A [by Ruffins].  Well, I'm going to read off of Document 87.  According to the Court's order where it says, is this the same, what you're asking me in reference to the response of having multiple residences to go to that evening, would those residences have been just in Escambia County or in other surrounding counties; is that what you're asking me?

Q.  Right.  That's what I read to you from the deposition, page 14, lines 1 through 5.

A.  I understand what you're saying about a deposition, but I'm making sure it's in cooperation with the Court's order.

Q.  Yes, that's the question I'm referring to.  So what's your answer to that question?

A.  My answer to that question is—there's a lot I can't remember from that night, but you asked me the same question like four different times.  Are those compound questions or is it a certain reason that you asked me the question multiple times?

Q.  Do you have an answer to that question and if you do what is that answer?

A.  Yes.

Q.  What is your answer?

A.  My answer is yes.

Q.  That was a two-part question, so the question was—

A.  So it's a compound question—

Q.  Hold on.  Were those residences in just Escambia County or were they in other counties as well; what is your answer to that question?

A.  Just in Escambia County.

Q.  As to those residences, what were the addresses of those residences?

A.  That's not one of the questions in the order.

Q.  Right.  Are you refusing to answer that question?

A.  No.  I'm objecting to the question, because that's not in the order according to Document 87.

Q.  An objection does not stop you from answering the question.  If you refuse to answer the question, you need to state that with your reason on the record.  You can state your objection and we can stop the

deposition and we can bring this issue before the judge, or you can state your objection and then you can proceed to answer the question.

So what are you choosing to do at this moment regarding the question I just asked you about the addresses of those residences?

A.  Yeah, I'm not refusing to answer the question, but we can bring it before the judge if that's what you prefer.

Q.  Are you stating that you want to cease this deposition and bring this issue before the judge?

A.  Unless you want to move on and complete these other questions before you leave.

Q.  So just so I'm very clear, the question of the—what are the addresses of those other residences, you are not going to answer that question?

A.  That's not one of the questions in the order, so, no, I'm not.

Q.  So that's no, you're not going to answer that question?

A.  There's—it's not in the Court's order.

Q.  So are you going to answer the question—it's a yes—I'm asking you a yes or no question.

A.  Like I told you when the deposition first started, I'm only prepared to answer the questions that's [sic] in the Court's order.

(Ruffins Dep. 6:23–10:14).

Ruffins continued to play a game of semantics by stating he would not answer

any questions except those referenced in the court's order, but when counsel directly

asked Ruffins if he was refusing to answer, Ruffins responded "no" and said he was

simply "objecting."  As an example, counsel asked Ruffins a question which is

routinely asked of deponents in order to discover possible impeachment evidence:

> Q.  . . . [H]ave you ever been convicted of any felonies besides
> the felony convictions that were outlined in Exhibit 1?
>
> A.  Can I ask you one question?
>
> Q.  No, sir.  This is my opportunity to ask you questions.
>
> So regarding other felonies, have you ever been convicted of
> another felony besides those outlined in Exhibit 1, which is Criminal
> Case Number 16-CF-5422?
>
> A.  I would like to move on from that question, because that's
> not one of the questions in Document 87.
>
> The only question close to that one was have you ever been
> arrested before.
>
> Q.  Are you refusing to answer whether or not you've been
> convicted of any other felonies besides those outlined in Exhibit 1?
>
> A.  No, I'm not refusing but I'm objecting, because this is a clear
> Court order and I just don't understand why—I mean, this is starting to
> become—it's starting to become annoying, because I thought we was
> [sic] supposed to be following the Court's order.
>
> Q.  Mr. Ruffins, these are questions—do you understand—let me
> back up just a minute.
>
> Do you understand what depositions are for?
>
> A.  I understand what they're for, but I don't understand why
> we're going outside the Court's order.

Q.  These are questions, these are just—these are part of the discovery process.

A.  I understand that.

Q.  Any question that could potentially lead to relevant evidence, I have a right to ask you on behalf of my clients.

A.  According to the rules, you do.  But in the Court's order, it says it's not—in the Court's order.

(Ruffins Dep. 12:15–13:23).

Ruffins was obstructionist even when counsel asked him a question specifically referenced in the court's order—he provided an evasive answer, and when counsel asked clarifying questions, Ruffins refused to answer because the questions were "outside the Court's order."  For example, one of the questions referenced in the court's order was "Do you know who Donnell Edward Poe is?" (*see* ECF No. 87 at 2).  This is how Ruffins answered when counsel asked that question at the re-convened deposition:

A.  I don't know how—I mean, according to the arrest report—according to my arrest report, that name has been used a few times.

Q.  By who?

A.  Let me just show you the document what I'm speaking of.  I don't have the original arrest report, so I'm not going be able to show you that document at this time, but you should have a copy of it.

Q.  What specifically is in that arrest report that you're referring to?

A.  That name being used.  Donnell Poe being used, to answer your question about do I know who Donnell Poe is.

Q.  Are you saying someone other than you would have used his name before?

A.  No, I did not say that.  I said that I have used that before, because that's who I become at times.

Q.  When did you begin using that name?

A.  I'm not sure.

Q.  So you don't dispute—hold on.

Donnell Edward Poe is not your birth name, correct?

A.  No, I don't believe so.

Q.  Is there a possibility it might be your birthname?

A.  I'm not really sure at this moment.  I have a lot of things going on in my mind mentally.  So I would prefer you stick to the questions in Document 87, so you won't be confused here and we won't have to drag this deposition out.

Q.  I'm not dragging it out.  I'm just trying to get some clarity.  So regarding the question of if you are you [sic] unsure whether Donnell Edward Poe is your birth name, can you answer that question?

A.  I don't feel the need to answer that question at this time.  I would just like to get these depositions—get these depositions out the [sic] way, because I'm really not in the mood to answer anything outside the Court's order.

Q.  Is that your basis for not answering that question?

A.  Yes.

(Ruffins Dep. 18:3–19:19,).

The re-convened deposition proceeded, with counsel asking Ruffins questions referenced in the court's order, and Ruffins responding that he did not recall (Ruffins Dep. 19:20–23, 22:6–23:7, 23:23–24:20).  The deposition ended when counsel asked Ruffins three questions which were not referenced in the court's order:

Q.  Have you ever—before October 17, 2016, have you ever been arrested for possession of marijuana charge?

A.  I don't want to answer that question, because it's not in the document 87.  That was the last question, but you're sure that you had not just arrived there, that was the last question that the Court ordered me to answer, so I'd like to stop there.

Q.  On October 17, 2016, did you have marijuana on your person?

A.  I don't want to answer that question, because those 17 questions that you asked me was all the Court ordered me to answer.

Q.  So are you not going to answer that question?

A.  No.

Q.  Why is that, please?

A.  Because I was just—I'm trying to follow the Court's order and I'm kind of getting a little aggravated.

Q.  At the time Deputy DeSilva approached you on October 17, 2016, do you recall him attempting to engage you in conversation?

A.  I'm not going to answer any more questions.

Q.  Are you refusing to answer any more questions at all?

A.  Yes.  According to the order, I only had to answer those 17 questions.

Q.  Are you ending this deposition?

A.  I would like to.

MS. CAROTHERS [counsel for Defendants]:  For the record, I had additional questions related to the plaintiff's interaction with Deputy DeSilva, specifically that would have been directly related to questions that have been previously asked that were outlined in Court's Order 87, and the plaintiff is refusing to answer any additional questions.

So before we leave, we will get a copy of the document, 87, that the plaintiff has and we'll enter that as an exhibit into the deposition and then we'll be finished.

(Ruffins Dep. 25:25–27:14).

## II.   DISCUSSION

Defendants seek relief under Rule 37(b) of the Federal Rules of Civil Procedure, and Rule 41.1 of the Local Rules of this Court (*see* ECF No. 91).  Rule 37(b) provides, in relevant part:

**(2) Sanctions Sought in the District Where the Action Is Pending.**

**(A)**  *For Not Obeying a Discovery Order.*  If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . . .

**(C)** *Payment of Expenses.*  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A), (C).

A district court has broad discretion in imposing sanctions pursuant to Rule 37.  *See BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048–49 (11th Cir. 1994).  But the Supreme Court has interpreted the Rule 37 requirement of a "just" sanction to represent "general due process restrictions on the court's

discretion." *Insurance Corp. of Ireland, Ltd., v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).  The probable merit of a litigant's case does not preclude the imposition of sanctions for a failure to comply with discovery orders or court rules.  *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993).

Where the severest sanction of dismissal is imposed, there must be a finding of bad faith or willfulness.  *See Malautea*, 987 F.2d at 1542.  "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal."  *Id.* (citations omitted).  If the party does not provide a credible explanation of how he interpreted an order compelling discovery in a way that excluded certain discovery from the scope of the order, the party's unsupported assertion that it misunderstood the order is insufficient, and it is not clear error for the district court to find that the party's failure to comply with the discovery order was willful and in bad faith.  *See Malautea*, 987 F.2d at 1543.

When contemplating dismissal for flagrant or willful discovery violations, the court must consider "whether a less drastic but equally effective remedy could have been fashioned."  *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481–82 (11th Cir. 1982).  "[T]he severe sanction of a dismissal or default judgment is appropriate

only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malautea*, 987 F.2d at 1542 (citation omitted).

Finally, while the pleadings of pro se litigants are held to a less stringent standard than pleadings drafted by attorneys, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), pro se litigants still must comply with procedural rules, *Moton v. Cowart*, 631 F.3d 1337, 1340 n.2 (11th Cir. 2011). Specifically, the Eleventh Circuit has held that pro se litigants are subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Ruffins' refusal to answer questions would have been justified if the court had limited the re-convened deposition to only the seventeen questions Ruffins refused to answer in his first deposition. *See* Fed. R. Civ. P. 30(c)(2) (a deponent may refuse to answer " when necessary . . . to enforce a limitation ordered by the court.") But the court imposed no such limitation; indeed, the only limitation ordered by the court was the date by which the parties were required to re-convene the deposition.

Ruffins has demonstrated a pattern of hindering the taking of his deposition. Ruffins was on clear notice that he was required to provide complete and truthful answers to the questions posed by Defendants' counsel at the re-convened deposition; and he was clearly warned that his failure to do so would be treated as

contempt of court and *would* result—not "possibly" result (*see* ECF No. 87 at 13)—in a recommendation of dismissal of this case in whole or in part.  In the face of this clear warning (indeed, Ruffins had a copy of the court's order in his hand at the re-convened deposition), Ruffins again engaged in obstructionist behavior and acted in bad faith by refusing to provide complete answers to all of the questions posed by Defendants' counsel.

Ruffins has unnecessarily increased the cost of this litigation, and his refusal to meaningfully participate in discovery prevents Defendants from adequately preparing a defense.  The case hinges on the reasonableness of the deputies' use of force in effecting Ruffins' arrest, and it is apparent, from the pleadings and dispositive motions, that the deputies' version of the timing and nature of force they used is very different than Ruffins' version.  The parties' ability to impeach each other's version is crucial, and Ruffins has obstructed the most routine discovery method for collecting impeachment evidence, i.e., the taking of the opposing party's deposition.  Ruffins should be sanctioned for his conduct.

With respect to the nature of sanctions, they say the past is the best predictor of the future.  Lesser sanctions (e.g., a monetary sanction and requiring Ruffins to sit for another deposition) have not be successful in gaining Ruffins' compliance

with discovery.[3]    And staying the case would not further the interest of justly

resolving this case, since its resolution hangs on the parties' memories of events that

occurred one night over three years ago, and memories naturally fade.    The

appropriate remedy for Ruffins' failure to obey the court's discovery order is to

dismiss this case.    *See, e.g., Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th

Cir. 2014) (district court did not abuse its discretion in determining that dismissal of

plaintiffs' case with prejudice was an appropriate sanction for being in civil

contempt of a discovery order; plaintiffs were warned by magistrate judge on two

occasions that their case *could* be dismissed if they did not participate in conference

for planning discovery, and record supported district court's finding that plaintiffs'

choice to disregard discovery order was willful) (unpublished but recognized as

persuasive authority); *Shortz v. City of Tuskegee, Ala.*, 352 F. App'x 355, 359–60

(11th Cir. 2009) (district court did not abuse its discretion in dismissing plaintiff's

claims with prejudice for failure to comply with the court's discovery orders;

plaintiff was aware of the consequences of failing to comply with the court's orders,

---

[3] Prior to the re-convened deposition, Ruffins knew he would likely be required to pay two monetary sanctions for his discovery violations:  (1) Defendants' expenses, including attorney fees, incurred in filing the motion to compel his answers to deposition questions (*see* ECF Nos. 74, 87), and (2) Defendants' expenses, including attorney fees, incurred in filing a motion for protective order to relieve them of responding to Ruffins' untimely discovery requests (*see* ECF No. 77, 90).  The threat of monetary sanctions obviously did not motivate Ruffins to cooperate during his re-convened deposition.

and in light of plaintiff's willful continued failure to comply with the court's orders and his failure to offer an explanation for his non-compliance, any sanction less than dismissal with prejudice would not have sufficed); *Clark v. Keen*, 346 F. App'x 441, 442–43 (11th Cir. 2009) (dismissal of action with prejudice was warranted as sanction for plaintiffs' failure to comply with court's order to attend scheduled depositions; court had warned plaintiffs that any further actions on their part which demonstrated a lack of diligence in prosecuting this action or failure to comply with their obligations would result in dismissal of the case, the plaintiffs did not offer any reasons why they could not attend the depositions at the scheduled time, and plaintiffs' failure to attend the depositions was willful and flagrant); *U.S. v. One 32%2C Scorpion Go-Fast Vessel*, 339 F. App'x 903, 905–06 (11th Cir. 2009) (district court did not clearly err by finding that failure of claimant in forfeiture action to provide all of requested documents by deadline was willful and in bad faith, where claimant did not provide credible explanation of his alleged misunderstanding of court's order or provide evidence demonstrating that he could not have timely produced those documents; and dismissal of claimant's claim was not abuse of discretion where district court entered order compelling claimant to produce all discovery by certain date, found that claimant willfully failed to comply with that order, found that government was prejudiced by claimant's willful failure to comply,

and was not required to first apply lesser sanctions); *U.S. v. $343,726.60 in U.S. Currency seized from Scottrade Account #81733422*, 271 F. App'x 972, 973 (11th Cir. 2008) (district court did not abuse discretion in dismissing claimant's claim, where claimant first refused to appear for properly noticed deposition, then defied court's subsequent orders to appear after government moved to compel appearance, and thereafter engaged in campaign to avoid complying with discovery and delay the litigation); *Lawal v. RTM*, 260 F. App'x 149, 155 (11th Cir. 2006) (district court's dismissal of terminated employee's overtime claim under FLSA, as sanction for employee's failure to comply with discovery order to appear for deposition, was not abuse of discretion; court ordered employee to make himself available for deposition and warned him that failure to comply *could* result in dismissal of claim, and employee responded to request for deposition by stating that he would appear only if defendants tendered their own clients for deposition, indicating bad faith and willful failure to comply with discovery order).

In addition to dismissal, Defendants seek monetary sanctions and request that Ruffins be made to pay the costs and attorney fees incurred in re-convening the deposition and litigating the Motion for Contempt of Court and Motion for Sanctions (*see* ECF No. 91).  The court is authorized to order Ruffins to pay Defendants' costs and fees "instead of or in addition to" the sanction of dismissal.  *See* Fed. R. Civ. P.

37(b)(2)(C).  Because the court is imposing the most severe sanction, it seems that requiring Ruffins to additionally pay Defendants' costs and fees would be excessive. The court declines to do so.

Accordingly, it is respectfully **RECOMMENDED**:

That Defendants' Motion for Contempt of Court and Motion for Sanctions (ECF No. 91) be **GRANTED** and this case **DISMISSED** with prejudice as a second sanction for Plaintiff's hindrance of the discovery process.

At Pensacola, Florida, this <u>13th</u> day of February 2020.

<i>/s/ Elizabeth M. Timothy</i><br>
<b>ELIZABETH M. TIMOTHY</b><br>
<b>CHIEF UNITED STATES MAGISTRATE JUDGE</b>

<u><b>NOTICE TO THE PARTIES</b></u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**